UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 19-cv-05705-ALC |
| Plaintiff, | |
| vs. | |
| ANATOLY HURGIN, ALEXANDER AUROVSKY, ABILITY COMPUTER & SOFTWARE INDUSTRIES LTD, AND ABILITY INC., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALEXANDER AUROVSKY'S MOTION TO DISMISS THE COMPLAINT

MORRISON COHEN LLP
Jason Gottlieb
Edward P. Gilbert
Daniel C. Isaacs
909 Third Avenue
New York, New York 10022
(212) 735-8600
jgottlieb@morrisoncohen.com
egilbert@morrisoncohen.com
disaacs@morrisoncohen.com

*Attorneys for Defendant Alexander Aurovsky*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ........................................................................ 1

FACTS RELEVANT TO THE INSTANT MOTION .................................................. 5

A.    Aurovsky's Lack Of Involvement With The Merger ........................................ 6

B.    The Complaint Does Not Allege Any Non-Conclusory Facts Describing
Aurovsky's Knowledge Of The Purported Misstatements Or Omissions ......................... 8

ARGUMENT ........................................................................................... 9

I.    THE COURT LACKS PERSONAL JURISDICTION OVER AUROVSKY .................. 9

    A.    Legal Standards Governing Aurovsky's Rule 12(b)(2) Motion .......................... 9

    B.    Aurovsky's Circumscribed Conduct In Connection With The
Merger Does Not Satisfy Minimum Contacts ...................................... 11

    C.    Asserting Personal Jurisdiction Over Aurovsky In This Case
Is Not Reasonable ................................................................. 15

II.    BECAUSE AUROVSKY WAS NOT INVOLVED IN THE MERGER, THE
COMPLAINT FAILS TO STATE A SECURITIES LAW CLAIM .............................. 16

    A.    Legal Standards Governing Aurovsky's Rule 12(b)(6) Motion ........................ 16

    B.    Applicable Securities Law ........................................................ 17

    C.    The Complaint Does Not Allege Any Actionable Negligent Conduct
By Aurovsky ...................................................................... 18

        1.    Aurovsky Is Not Alleged To Have Made Any Statements
About, Or Provided Any Information About, The Backlog,
Pipeline, ULIN, Or The Latin American Police Agency .............................. 19

        2.    The Complaint Contains No Allegations That Aurovsky
Knew Or Should Have Known That The Five Alleged Misstatements
Or Omissions Were Actually Misstatements Or Omissions ........................... 20

III.   AUROVSKY RESPECTFULLY JOINS THE ARGUMENTS OF
       HURGIN THAT NONE OF THE ALLEGED MISSTATEMENTS OR
       OMISSIONS ARE ACTIONABLE, THE SEC'S CLAIMS FOR SCHEME
       LIABILITY FAIL, AND THE SEC'S DISGORGEMENT CLAIMS MUST
       BE DISMISSED ......................................................................................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.I. Trade Fin., Inc. v. Petra Bank*,
  989 F.2d 76 (2d Cir. 1993)......................................................................................15

*Aaron v. SEC*,
  446 U.S. 680 (1980).............................................................................................17

*Alki Partners, L.P. v. Vatas Holding GmbH*,
  769 F. Supp. 2d 478 (S.D.N.Y. 2011).................................................................13

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
  480 U.S. 102 (1987).............................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................6, 16

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008), *aff'd sub. nom.*
  *State Univs. Ret. Sys. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009).......11, 12, 13, 14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002)................................................................................11

*Bd. of Trustees of City of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub. nom. Frederick v. Mechel*
  *OAO*, 475 F. App'x 353 (2d Cir. 2012) ...............................................................22

*Bersch v. Drexel Firestone, Inc.*,
  519 F.2d 974 (2d Cir. 1975).................................................................................10

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007).................................................................................11

*In re Braskem S.A. Sec. Litig.*,
  246 F. Supp. 3d 731 (S.D.N.Y. 2017)...........................................................11, 13, 14

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1994).................................................................................16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).......................................................................................14, 15

*Calder v. Jones*,
  465 U.S. 783 (1984).............................................................................................10

*Chambers v. Time Warner, Inc*.,
   282 F.3d 147 (2d Cir. 2002)....................................................................................16

*Dekalb Cty. Pension Fund v. Transocean Ltd*.,
   817 F.3d 393 (2d Cir. 2016)....................................................................................18

*In re Elan Corp. Secs. Litig.*,
   No. 02 Civ. 865 (RMB)(FM), 2004 U.S. Dist. LEXIS 9913
   (S.D.N.Y. May 18, 2004)........................................................................................18

*Feick v. Fleener*,
   653 F.2d 69 (2d Cir. 1981)......................................................................................17

*Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*,
   582 F.3d 393 (2d Cir. 2009)....................................................................................10

*Gruss v. Curtis Publishing Co*.,
   534 F.2d 1396 (2d Cir. 1976)..................................................................................18

*Hanson v. Denckla*,
   357 U.S. 235 (1958)................................................................................................14

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011).......................................................................................*passim*

*Kavowras v. N.Y. Times Co*.,
   328 F.3d 50 (2d Cir. 2003)......................................................................................16

*Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.*,
   26 F. Supp. 2d 593 (S.D.N.Y. 1998).........................................................................9

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019)...................................................................................4, 5, 23

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)........................................................................22

*Mugno v. Societe Internationale de Telecomms. Aeronautiques, Ltd.*,
   No. 05-cv-2037 (DRH) (ARL), 2007 U.S. Dist. LEXIS 6573
   (E.D.N.Y. Jan. 30, 2007) ..........................................................................................9

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 449 (S.D.N.Y. 2005)......................................................................11

*Pearl River Union Free Sch. Dist. v. Duncan*,
   56 F. Supp. 3d 339 (S.D.N.Y. 2014).......................................................................17

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
  507 F.3d 117 (2d Cir. 2007).................................................................................16

*Rex & Roberta Ling Living Trust v. B. Commc'ns. Ltd.*,
  No. 17-CV-4937 (JPO), 2019 U.S. Dist. LEXIS 52839
  (S.D.N.Y. Mar. 28, 2019) ..........................................................................13, 14

*SEC v. Alexander*,
  160 F. Supp. 2d 642 (S.D.N.Y. 2001)....................................................................14

*SEC v. Big Apple Consulting USA, Inc.*,
  783 F.3d 786 (11th Cir. 2015) ..............................................................................23

*SEC v. Patel*,
  No. 07-cv-39-SM, 2008 U.S. Dist. LEXIS 23553 (D.N.H. Mar. 24, 2008)...........4, 17, 20, 23

*SEC v. Pocklington*,
  No. EDCV 18-701, 2018 U.S. Dist. LEXIS 227362 (C.D. Cal. Sept. 10, 2018) ...................19

*SEC v. Roanoke Tech. Corp.*,
  No. 6:05-cv-1880-Orl-31KRS, 2006 U.S. Dist. LEXIS 59835
  (M.D. Fla. Aug. 24, 2006) ...............................................................................4, 20

*SEC v. Shanahan*,
  646 F.3d 536 (8th Cir. 2011) ........................................................................4, 19, 21

*SEC v. Sharef*,
  924 F. Supp. 2d 539 (S.D.N.Y. 2013).................................................................10, 15

*SEC v. Unifund Sal*,
  910 F.2d 1028 (2d Cir. 1990)..............................................................................10

*SEC v. Wey*,
  246 F. Supp. 3d 894 (S.D.N.Y. 2017)...........................................................16, 17, 18

*Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic
  Diocese of Albany)*,
  745 F.3d 30 (2d Cir. 2014)...............................................................................10

*Vides v. Amelio*,
  265 F. Supp. 2d 273 (S.D.N.Y. 2003)....................................................................18

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001)...............................................................................9

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980).......................................................................................15

## STATUTES

15 U.S.C. § 78aa ......................................................................................................10

15 U.S.C. § 78n(a) ...................................................................................................17

15 U.S.C. § 77v ........................................................................................................10

Fed. R. Civ. P. 9(b) ..................................................................................................17

Fed. R. Civ. P. 10b-5 ...............................................................................................17

Fed. R. Civ. P. 12(b)(2) .........................................................................................1, 9

Fed. R. Civ. P. 12(b)(6) ....................................................................................1, 6, 16

Fed. R. Civ. P. 14a-9 .......................................................................................... *passim*

Defendant Alexander Aurovsky respectfully submits this memorandum of law in support of his motion to dismiss the complaint ("Complaint" or "Compl.") by Plaintiff Securities and Exchange Commission ("SEC"), under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, as well as Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Aurovsky also joins the arguments in the motion to dismiss by defendant Anatoly Hurgin to the extent applicable.

## PRELIMINARY STATEMENT

The SEC's Complaint makes clear that Alexander Aurovsky was barely involved in the December 2015 business transaction between Cambridge Capital Acquisition Corporation ("Cambridge"), a publicly-traded company, and a small, private Israeli company called Ability Computer & Software Industries ("ACSI"), where Aurovsky was a co-owner and Chief Technology Officer.  Indeed, most of the SEC's charges against Aurovsky sound in negligence – that he should have done things, but he did not – which only underscores his lack of involvement.

The allegations that Aurovsky did not do things is precisely why this Court should both (1) decline to exercise personal jurisdiction over Aurovsky, an Israeli who is not alleged to have made (or have participated in making) any statements at all, let alone any misstatements, to any American investors, and (2) dismiss for failure to state a claim against Aurovsky, as the Complaint makes clear that he was fundamentally uninvolved with the alleged wrongs.

At the outset, the SEC's allegations in the four corners of the Complaint do not establish that Aurovsky had the minimum contacts required by the Due Process Clause of the Fifth Amendment to exercise jurisdiction over a non-consenting foreign party.  The Complaint confirms that Aurovsky resides in Israel, does not hold a securities license, and never has been registered with the SEC.  The Complaint does not allege that Aurovsky traveled to the United States in connection with merger of ASCI, or even that Aurovsky communicated with any American

investors.  The Complaint makes clear that Aurovsky did not negotiate the merger, attend any of the meetings or road shows associated with the merger, or sign the merger agreement.

The Complaint does allege that Aurovsky signed representation letters that were provided to ACSI's Israeli auditors.  But as the Complaint makes clear, these letters were not sent to investors in the United States – only to ACSI's Israeli auditors.  And there is no allegation that Aurovsky would have had any reason to know if they contained inaccuracies.  Indeed, the only document that Aurovsky signed that is filed with the SEC is a Consent of Person to Become Director (attached as Exhibit 99.5 to Amendment No. 2 of the Form S-4 registration statement), which says only that Aurovsky consented to be a director of an entity that was planned on being created at some future point.  There is no nexus between that Consent and any of the specific wrongdoing alleged in the Complaint.

Fundamentally, the SEC's complaints against Aurovsky are for negligence; they are complaints for _not_ acting.  Such inaction cannot serve as the basis of a jurisdictional allegation that Aurovsky _acted_ in a manner directed at the United States.  Accordingly, the Court should dismiss the Complaint against Aurovsky for lack of personal jurisdiction.

The Court also should dismiss for failure to state a claim against Aurovsky.  The SEC alleges that Aurovsky was negligent regarding the same five purported faults for which it blames Hurgin:  (1) misrepresenting whether ACSI's backlog was supported by "signed purchase orders"; (2) painting a too-rosy picture of its pipeline of prospective sales; (3) misrepresenting or omitting facts about ACSI's legal rights pertaining to the ULIN product; (4) failing to disclose a hyper-specific risk about personnel turnover at its Latin American police agency customer; and (5) making misrepresentations or omissions to ACSI's private accountants.

The SEC evidently recognizes that it has no case against Aurovsky for any intentional fraud, due to his complete lack of involvement in making, or contributing to, any of the statements the SEC alleges were fraudulent.  Thus, the SEC does not charge Aurovsky with any intentional fraud, and only alleges claims against Aurovsky for purported <u>non</u>-scienter-based violations of the securities laws – for "negligent" securities fraud under Sections 17(a)(2) and 17(a)(3) of the Securities Act, and Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.

But the SEC does not allege facts sufficient to conclude that Aurovsky personally had any particular duties to disclose any information, or correct any misstatements, allegedly made by others.  Nor does the SEC allege that it would have been remotely reasonable for Aurovsky, who was uninvolved with the negotiations or preparations of the securities filings, to have caught and corrected these alleged misstatements, in a language he does not speak, on topics about which he had no knowledge or input.

The SEC asserts generally that Aurovsky had a duty "as a present and future director, officer, and controlling shareholder" to ensure that the proxy materials did not contain any material misstatements or omissions.  That assertion is incorrect, as a matter of law.  Aurovsky did not have a duty (and no reasonable person could possibly have had the capacity) to catch and correct a subtle five-word error about the purchase orders, made by a separate company, annexed to a 400-page Proxy Statement.  Aurovsky had no duty to "correct" projections – quintessential statements of opinion – made by other people, nor does the SEC allege that Aurovsky would have had any reason to know at the time they were made that they would not come to pass.  Aurovsky had no duty to disclose a hyper-specific risk about personnel turnover at its Latin American police agency customer, nor does the SEC allege that Aurovsky would have had any reason to know at the time that such turnover would affect Ability in any way.  And Aurovsky had no duty to "correct" a

purported misstatement (a garbled transcription or an extemporaneous oral comment), about the licensing status of a new product, ULIN, about which Aurovsky was not alleged to be involved, nor does the SEC allege that Aurovsky would have had any reason to know at the time that the statement was even made, let alone that it was inaccurate in any way.

No case holds that a corporate officer or director is personally responsible for catching and correcting any and all statements made by others in every securities filing made by his company. Indeed, several courts have dismissed SEC claims of Section 17(a) negligence against directors who were not alleged to have been involved with the purported misstatements or omissions. *See, e.g., SEC v. Shanahan*, 646 F.3d 536, 546 (8th Cir. 2011); *SEC v. Patel*, No. 07-cv-39-SM, 2008 U.S. Dist. LEXIS 23553, at *18-19 (D.N.H. Mar. 24, 2008); *SEC v. Roanoke Tech. Corp*., No. 6:05-cv-1880-Orl-31KRS, 2006 U.S. Dist. LEXIS 59835, at *8 (M.D. Fla. Aug. 24, 2006) (each addressed in more detail below).

The essence of the Supreme Court's holding in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), is that securities fraud liability should not lie against a person who did not make an untrue statement or contribute to the alleged fraud. And, as the Supreme Court recently re-affirmed in *Lorenzo v. SEC*, 139 S. Ct. 1094, 1103 (2019), "we can assume that *Janus* would remain relevant (and preclude liability) where an individual neither makes nor disseminates false information – provided, of course, that the individual is not involved in some other form of fraud."

The SEC cannot circumvent *Janus* by merely pointing to the negligence or scheme provisions of Section 17(a)(2)-(3) and saying that any director or officer in the vicinity of his company's securities filing has a free-floating duty to check every single word of every single filing. The securities laws are not horseshoes or hand grenades; close enough is not good enough.

After *Janus* and *Lorenzo*, for the SEC to plead violations of the securities laws, even on the "lesser" burdens under Sections 17(a)(2)-(3) or Rule 14a-9, there must be some particularized allegations of fraud or participation in a fraudulent scheme.  For Alexander Aurovsky, no such basis is alleged.

It is worth noting – because the SEC artfully avoids alleging it – that the Complaint was filed after a lengthy SEC investigation, in which millions of pages of documents were provided to the SEC by Ability Inc. and many others, and the SEC took testimony (in Israel) from Aurovsky himself.  If Aurovsky took any acts that could form the basis of jurisdiction, or if Aurovsky made or contributed to any misstatements, the SEC had full knowledge of those facts.  Instead, the best the SEC could allege was that Aurovsky never spoke to any investors in the United States, never traveled to the United States in connection with the merger, never made or contributed to any misstatements to Americans, and simply failed to catch alleged errors that other people made, in a language he did not speak, in areas that were not his responsibility.

The SEC has had years to put its best case against Aurovsky forward.  This is all it has.  The Complaint as against Aurovsky should be dismissed with prejudice.

## FACTS RELEVANT TO THE INSTANT MOTION

For brevity, Aurovsky respectfully incorporates herein the relevant facts described in Hurgin's memorandum of law in support of his motion to dismiss the Complaint.  *See* Memorandum of Law in Support of Motion to Dismiss filed by Anatoly Hurgin, Jan. 24, 2020 (ECF No. 43 ("Hurgin Brief"), at pp. 3-10).

The additional facts relevant to Aurovsky's independent arguments, set forth below, are drawn from the Complaint,[1] as well as the following documents, each of which were publicly-filed

---

[1]    A true and correct copy of the Complaint is annexed as Exhibit 1 to the Declaration of Jason P. Gottlieb, dated January 24, 2020 ("Gottlieb Dec.").  The allegations in the Complaint are

with the SEC and specifically incorporated by reference in the Complaint: (1) the Cambridge Capital Acquisition Corporation Proxy Statement ("Proxy Statement"), filed on December 2, 2015 (Gottlieb Dec., Ex. 2); (2) the November 2015 presentations entitled, "Proposed Merger with Cambridge Capital Acquisition Corporation," filed on November 16, 24, and 30, 2015 (Gottlieb Dec., Exs. 3-5); (3) the transcript of an internet investor presentation, filed on November 18, 2015 (Gottlieb Dec., Ex. 6); and (4) the "Consent of Person to Become Director," signed by Aurovsky and filed by Cambridge on November 17, 2015 (Gottlieb Dec., Ex. 7).

### A.      Aurovsky's Lack Of Involvement With The Merger

Aurovsky resides in Ramat Gan, Israel, and was 66 years old when the SEC filed its Complaint.  He holds no securities licenses, and has never been registered with the SEC in any capacity.  (Compl. ¶ 14.)  Before the business combination of Cambridge and ACSI, Aurovsky was ACSI's co-owner and Chief Technology Officer.  He co-founded ACSI with Hurgin.  (*Id.*)

Aurovsky played a negligible role in the merger of Cambridge and ACSI.  The SEC does not allege that Aurovsky ever reviewed the Proxy Statement (Compl. ¶ 175), or that he was charged with the responsibility for doing so.  Rather, the only connections that Aurovsky is alleged to have had with the merger is: (1) an awareness that Ability was negotiating an agreement to merge with Cambridge, and that Ability would become a public company, trading on a U.S. stock exchange (Compl. ¶ 151); (2) providing his consent for the merger (Compl. ¶ 155); (3) providing his consent to having his name being used in the Proxy Statement (Compl. ¶¶ 157, 164, 166; Gottlieb Dec., Ex. 7); and (4) receiving payment for his shares of ACSI (Compl. ¶ 188).

---

taken as true only for the purposes of this motion, under the well-known standards on Rule 12(b)(6) motions.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The SEC does not allege that Aurovsky provided any information about ACSI to Cambridge or its investors.  The Complaint alleges that Hurgin – not Aurovsky – "took the lead in negotiating with Cambridge and providing information about Ability to Cambridge and the various professionals retained in connection with the merger."  (Compl. ¶ 149.)  Aurovsky is not alleged to have had any role in the creation or transmission of the August 2015 Spreadsheet, or the creation of the backlog or pipeline financial forecasts.  (Compl. ¶¶ 26-34.)  Nor is Aurovsky alleged to have given any information to Prometheus Financial Advisory Ltd. or Economics Partners, LLC, or to have reviewed (or even heard of) those advisors' respective reports.  (Compl. ¶¶ 35-53.)

The SEC also does not allege that Aurovsky attended either of the two investor roadshows in the United States, or made any presentations (or played any part in creating or reviewing presentations) to Cambridge investors.  (Compl. ¶¶ 54-86.)  To the contrary, the SEC alleges that Hurgin – not Aurovsky – was responsible for sharing forward-looking financial forecasts with Cambridge or its professionals.  (*E.g.* Compl. ¶¶ 37, 50-51.)

Aurovsky was similarly uninvolved in the merger agreement.[2]  Although the Merger Agreement purports to be between Cambridge, ACSI, and "the securityholders of" ACSI, Aurovsky did not sign the Merger Agreement.  (*See* Gottlieb Dec., Ex. 2 (Proxy Statement) at A-1, A-61.)  Nor did the merger agreement charge him with any responsibilities or duties related to the merger.  (*See generally id.*)

Thus, contrary to the SEC's allegations (Compl. ¶¶ 92-94), Aurovsky himself did not make any representations or warranties to Cambridge in the Merger Agreement on his own behalf.  (*Compare* Compl. ¶¶ 92-94 *with* Gottlieb Dec., Ex. 2 (Proxy Statement) at A-61.)  Furthermore,

---

[2]     The merger agreement ("Merger Agreement") is contained as Annex A to the Proxy Statement.  (*See* Gottlieb Dec., Ex. 2 at Annex A.)

the Proxy Statement itself does not attribute any information contained within it to Aurovsky.  (*See generally* Gottlieb Dec., Ex. 2 (Proxy Statement).)  While the SEC alleges that Aurovsky's name appears 29 times in the Proxy Statement, each of those 29 references refer exclusively to his biographical information, his role at ACSI, or his role as a future officer or director of Ability.  (*See* Gottlieb Dec., Ex. 2 (Proxy Statement) at 1, 3, 59, 124, 154, 165, 169, 170, 171, 173, 175, 177, 181, E-9.)

**B.     The Complaint Does Not Allege Any Non-Conclusory Facts Describing Aurovsky's Knowledge Of The Purported Misstatements Or Omissions**

The SEC's claims against Aurovsky are premised on the same five purported faults attributed to Hurgin.  The Complaint, however, does not contain any non-conclusory allegations ascribing knowledge to Aurovsky that the alleged misstatement or omissions were purportedly false or misleading – let alone that he knew that statements about these topics were even being made at all.  Namely:

**Backlog and Pipeline:**  the SEC alleges that Hurgin was solely responsible for generating and sharing ACSI's financial forecasts with Cambridge; Aurovsky is not alleged to have had any role in, or knowledge of, those forward-looking statements.  (Compl. ¶¶ 140-146.)

**ULIN:**  the Complaint does not allege that Aurovsky was aware of, or knew anything about, any representations relating to ACSI's reseller arrangement for ULIN.  The SEC alleges that "Aurovsky knew about the ULIN reseller agreement, including its three year term, revenue sharing, and penalty terms."  (Compl. ¶ 128.)  But the SEC's allegations are that Hurgin entered and signed the ULIN reseller agreement, and that Hurgin made representations about ULIN – not Aurovsky.  (Compl. ¶¶ 76, 79, 129.)  Again, there is no allegation that Aurovsky knew what statements were even being made about ULIN.

**Latin American Police Agency:**  the Complaint contains no specific allegations or factual content that Aurovsky knew that the management of the Latin American police agency, who had agreed to purchase ACSI's products had been terminated, or that their termination could affect Ability's capacity to recognize revenue from that customer.  (Compl. ¶¶ 135, 139.)

Finally, the SEC alleges that Aurovsky signed four **"Management Representation Letters"** in October and November 2015, which were provided to ACSI's auditor, but that are not alleged to have been given to Cambridge or its investors.  (Compl. ¶¶ 182-186.)  ACSI's auditor to whom the representation letters were provided, Ziv Haft Certified Public Accountants (Isr.), is based, and only has offices in, Israel.  (*See* Gottlieb Dec., Ex. 2 (Proxy Statement) at 140, F-49 (listing offices).)

## <u>ARGUMENT</u>

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER AUROVSKY

### A.    Legal Standards Governing Aurovsky's Rule 12(b)(2) Motion

"Upon motion, the Court is obligated to dismiss actions against defendants over whom it has no in personam jurisdiction."  *Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.*, 26 F. Supp. 2d 593, 597 (S.D.N.Y. 1998) (citing Fed. R. Civ. P. 12(b)(2)).  The plaintiff – here, the SEC – bears the burden of establishing that the Court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss.  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *see also Laborers Local 17 Health & Benefit Fund*, 26 F. Supp. 2d at 597 (plaintiff bears "ultimate burden" of showing proper jurisdiction by preponderance of evidence).  Conclusory allegations are not enough to establish personal jurisdiction.  *See Mugno*

*v. Societe Internationale de Telecomms. Aeronautiques, Ltd.*, No. 05-cv-2037 (DRH) (ARL), 2007 U.S. Dist. LEXIS 6573, at *31-32 (E.D.N.Y. Jan. 30, 2007).[3]

For a court to take jurisdiction over a non-consenting defendant, two conditions must be satisfied. Underline First, the court "must have a statutory basis for asserting jurisdiction over a defendant." *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 396 (2d Cir. 2009) (citation omitted). Underline Second, the court's statutorily authorized exercise of jurisdiction must comport with constitutional due process principles. *Id.*

In a case brought by the SEC, jurisdiction over a non-domiciliary is governed by 15 U.S.C. § 77v and 15 U.S.C. § 78aa, under the Securities Act of 1933 and the Securities Exchange Act of 1934 respectively. *See, e.g., SEC v. Sharef*, 924 F. Supp. 2d 539, 544 (S.D.N.Y. 2013). These sections provide a statutory basis for personal jurisdiction over a foreign defendant "to the limit of the Due Process Clause of the Fifth Amendment." *SEC v. Unifund Sal*, 910 F.2d 1028, 1033 (2d Cir. 1990); *see also Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 998 (2d Cir. 1975). Accordingly, the assertion of personal jurisdiction must be tested against a due process standard. *See Unifund Sal*, 910 F.2d at 1033; *see generally Sharef*, 924 F. Supp. 2d at 548 ("when a defendant[] is not located in the United States, great care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.") (internal quotation marks and brackets omitted).

---

[3]     No general personal jurisdiction over Aurovsky exists in this case. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Shovah v. Roman Catholic Diocese of Albany (In re Roman Catholic Diocese of Albany)*, 745 F.3d 30, 38 (2d Cir. 2014) (citation omitted); *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014). Aurovsky is not alleged to be domiciled in the United States, but rather in Israel. (Compl. ¶ 14). Thus, the only question is whether this Court has specific personal jurisdiction, which must be premised on the facts pertaining to each individual defendant. *See Calder v. Jones*, 465 U.S. 783, 790 (1984).

To assess whether an exercise of jurisdiction over Aurovsky comports with due process, the Court must conduct "an analysis consisting of two components: the 'minimum contacts' test and the 'reasonableness' inquiry.'" *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005) (*quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)). The "minimum contacts" analysis "looks to 'whether the defendant has certain minimum contacts [with the forum] … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (alteration and omission in original) (*quoting Bank Brussels*, 305 F.3d at 127). The "reasonableness" inquiry, in turn, asks "'whether it is reasonable under the circumstances of the particular case' to assert personal jurisdiction.'" *Id.* (*quoting Bank Brussels*, 305 F.3d at 129). Claims against an Israeli citizen and resident who works in Israel relating to his alleged conduct that occurred in Israel do not meet this standard.

### B.    Aurovsky's Circumscribed Conduct In Connection With The Merger Does Not Satisfy Minimum Contacts

In undertaking a minimum contacts analysis, a court "evaluates the 'quality and nature' of the defendant's contacts with the forum." *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 767 (S.D.N.Y. 2017) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)). A court must consider these contacts in their totality "with the crucial question being whether the defendant has 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws' such that [the defendant] should reasonably anticipate being haled into court there." *Id.* "A [defendant's] status as a board member is not alone sufficient to establish jurisdiction, and . . . conclusory allegations of participation in the fraud are insufficient" to establish personal jurisdiction. *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (internal citations omitted), *aff'd sub. nom. State Univs. Ret. Sys. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009).

In *AstraZeneca*, 559 F. Supp. 2d at 466-67, investors brought a securities class action lawsuit against a United States company and four of its officers and directors, including the Non-Executive Chairman of the Board of Directors (a citizen of the United Kingdom), and the Deputy Chairman of the Board of Directors (a Swedish citizen).  The foreign directors moved to dismiss for lack of personal jurisdiction because they had not "purposefully directed [their] activities toward the forum and the litigation arises out of or is related to [their] contact with the forum." *Id.* Specifically, the foreign directors argued that the complaint did not tie their travel to the United States, if any, to business related to the alleged misconduct in the complaint nor did the complaint allege that they "conduct[ed] any business anywhere regarding [subject matter of the complaint] other than their general supervisory duties as board members." *Id.*   In granting the foreign directors' motion to dismiss for lack of personal jurisdiction, Judge Griesa noted:

> [A]ny allegations that [the foreign directors] caused the distribution of false and misleading reports and statements to AstraZeneca investors in the U.S. or that they 'had actual knowledge that each of the representations alleged herein were materially false or misleading' are merely conclusory statements applicable to all individual defendants as a result of their positions within the Company. . . .  <u>A person's status as a board member is not alone sufficient to establish jurisdiction and such conclusory allegations of participation in the fraud are insufficient</u>.

*Id.* (emphasis added; citations omitted).

This Court should come to the same conclusion regarding Aurovsky.  Here, the Complaint concedes that Aurovsky is not a U.S. citizen and does not reside or do business in the U.S.; rather, he resides in Israel, does not hold a U.S. securities license, and has never has been registered with the SEC.  The Complaint also does not allege that Aurovsky traveled to the U.S. in connection with the business combination, presented to or interacted with Cambridge investors, attended either of the road show presentations to Cambridge investors, or signed any relevant documents filed with the SEC, such as the merger agreement or the Proxy Statement.  To the contrary, the

Complaint alleges that Aurovsky had a minimal, if any, role in any actual steps to advance the business combination (beyond receiving payment for his shares in ACSI).

The only affirmative acts to which the SEC points tying Aurosky to the merger are (i) his signature on management representation letters that ACSI transmitted to its private auditors, and (ii) his signature on a "Consent of Person to Become Director," which Cambridge filed with the SEC on or about November 17, 2015.  As with the foreign directors in *AstraZeneca*, neither of these two facts suffice to establish the minimum contacts sufficient hale him into U.S. District Court in connection with the instant case.  The private auditors were all in Israel; there is no allegation that Aurovsky sent those representation letters to U.S. investors, or intended any U.S. investors to rely on them.  And the "Consent" form literally just consents to Aurovsky's name being used in the Proxy Statement "as a person to become a director of Cambridge Holdco Corp." after the merger that was anticipated to one day occur.  (Gottlieb Dec. Ex. 7.)  There is no allegation that anything about that Consent was misleading, or even erroneous.  Thus, there are no specific acts alleged to have been directed at the United States.  *AstraZeneca*, 559 F. Supp. 2d at 466-67; *see Braskem S.A. Sec. Litig*., 246 F. Supp. 3d at 770 ("a conclusory statement that a foreign defendant caused an issuer to making false and misleading filings is not enough to support personal jurisdiction"); *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 489 (S.D.N.Y. 2011) ("conclusory allegations insufficient to establish general jurisdiction").

Another illustrative case is *Rex & Roberta Ling Living Trust v. B. Commc'ns. Ltd.*, No. 17-CV-4937 (JPO), 2019 U.S. Dist. LEXIS 52839 (S.D.N.Y. Mar. 28, 2019).  In that matter, Judge Oetken dismissed a complaint against two Israeli defendants for lack of personal jurisdiction because they were not alleged to have "played <u>any</u> role in making, proposing editing or approving" the SEC filings at issue.  *Id.* at *19 (emphasis in original).   Critical to the court's decision was

that, "[a]t most, [the foreign defendants] are alleged only to have signed allegedly false statements [that were then incorporated] into . . . filings." *Id.*  The court further held that, notwithstanding the possibility that a defendant may be found to have minimum contacts with the U.S. for "'signing or directly manipulating financial statements' or other information that ultimately reaches [the] United States," such a finding requires that the defendant be alleged to knowingly have signed a false SEC filing intending to defraud United States shareholders.  *Id.* at *19-20 (citation omitted).

Here, the Complaint contains no allegations that Aurovsky signed any false SEC filings, let alone that he did so intentionally, or even negligently.  The only SEC filing Aurovsky is alleged to have signed is the Consent to Become a Director, which is not alleged to be false in any way.

The fact that the SEC's claims against Aurovsky all sound in negligence simply underlines the inappropriateness of jurisdiction here.  As the Supreme Court has been stating repeatedly for over 60 years, for personal jurisdiction, a defendant must have "<u>purposefully</u> avail[ed] itself of the privilege of conducting activities within the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (same).  Courts in this District, of course, repeatedly cite this rule to reach the same conclusion.  *See Rex & Robert Ling Living Trust*, 2019 U.S. Dist. LEXIS 52839, at *16-17; *SEC v. Alexander*, 160 F. Supp. 2d 642, 656 (S.D.N.Y. 2001) (dismissing a defendant for lack of personal jurisdiction); *Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d at 770 (no personal jurisdiction where foreign defendant is not alleged to have played "any role in making, proposing, editing or approving" allegedly misleading SEC filings); *AstraZeneca*, 559 F. Supp. 2d at 466-67 (same).  Claims sounding purely in negligence, with no allegations of any duties to any Americans, cannot suffice to establish the <u>purposeful</u> conduct required for personal jurisdiction.

### C.       Asserting Personal Jurisdiction Over Aurovsky In This Case Is Not Reasonable

Additionally, it would be unreasonable to force Aurovsky to defend the instant case.  *See Sharef*, 924 F. Supp. 2d at 548 ("[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.").

For a "reasonableness" analysis, courts analyze: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113-14 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir. 1993) (discussing factors).  While finding jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp.*, 471 U.S. at 477.

As the SEC alleges, Aurovsky is a resident of Israel.  He is not alleged in the Complaint to have traveled to the U.S. at all (let alone in connection with the business combination), and was 66 years old at the time the SEC filed its Complaint.  (Compl. ¶ 14.)[4]  Accordingly, in the interest of showing the great care and reserve the law advises, the Court should not force Aurovsky to travel to the United States to defend against the instant case, in which he is alleged to have played an almost nonexistent role.  *Asahi Metal*, 480 U.S. at 114 (personal jurisdiction "unreasonable"

---

[4]       While the SEC "artfully" avoids alleging anything whatsoever about Aurovsky's English fluency, the SEC knows full well that Aurovsky does not speak English, which further counsels against the reasonableness of haling him into Court in the United States.

and "unfair" because it would require a foreign company to travel to California and submit its dispute to a foreign nation's judicial system; "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders").

## II.  BECAUSE AUROVSKY WAS NOT INVOLVED IN THE MERGER, THE COMPLAINT FAILS TO STATE A SECURITIES LAW CLAIM

### A.  Legal Standards Governing Aurovsky's Rule 12(b)(6) Motion

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The Court must examine only the well-pleaded factual allegations, ignoring any legal conclusions, and then determine whether they plausibly give rise to an entitlement to relief." *SEC v. Wey*, 246 F. Supp. 3d 894, 909 (S.D.N.Y. 2017); *see also Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

On a Rule 12(b)(6) motion, "consideration is limited to the factual allegations in plaintiff's complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents offered by the defendant that were either in plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1994); *see also Wey*, 246 F. Supp. 3d at 909.[5]  If the documents referenced in the complaint contradict the facts and

---

[5]  Aurovsky respectfully requests that the Court consider and take judicial notice of the documents annexed as Exhibits 2-7 to the Gottlieb Dec. on the basis that they are specifically incorporated by reference in the Complaint and were publicly filed with the SEC. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (holding court may rely on documents referenced in complaint in resolving Rule 12(b)(6) motion); *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (noting that courts may take judicial notice of public filings) *aff'd*, 132 F. App'x 381 (2d Cir. 2005).

inferences alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations.  *See Feick v. Fleener*, 653 F.2d 69, 75 n.4 (2d Cir. 1981); *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 346 n.2 (S.D.N.Y. 2014).

**B.     Applicable Securities Law**

The SEC has alleged two legal claims against Aurovsky:  a violation of Section 17(a)(2)-(a)(3) of the Securities Act (Count 3), and a violation of Section 14(a) of the Exchange Act and Rule 14a-9 (Count 4).

In order to plead a violation of Section 17(a)(2)-(a)(3), the SEC must allege that Aurovsky negligently used materially false and misleading statements to obtain money or property in connection with the sale or offer of securities; or engaged in a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.  *See* 15 U.S. Code § 77q(a)(2)-(3).  The requirements for establishing a violation of Section 17(a) are nearly the same as those required for a claim under Securities Exchange Act Section 10(b) and Rule 10b-5 thereunder, although the SEC is not required to demonstrate scienter with respect to subsections (a)(2) and (a)(3).  *Aaron v. SEC*, 446 U.S. 680, 697 (1980); *Patel*, 2008 U.S. Dist. LEXIS 23553, at *18-19.  While the SEC need not plead scienter for these causes of action, they remain subject to the heightened pleading requirements of Rule 9(b).  *See Wey*, 246 F. Supp. 3d at 916.

Section 14(a) of the Exchange Act makes it unlawful to solicit any proxy "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78n(a).  The elements of a Section 14(a) and Rule 14a-9 claim are "(1) that the proxy materials contain a false or misleading statement of a material fact or omit to state a material fact necessary in order to make the statement made not false or misleading; (2) that the misstatement or omission of a material fact was the result of

17

knowing, reckless or negligent conduct; and (3) that the proxy solicitation was an essential link in effecting the proposed corporate action." *Vides v. Amelio*, 265 F. Supp. 2d 273, 276 (S.D.N.Y. 2003). In the context of a proxy statement, "a fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *In re Elan Corp. Secs. Litig.*, No. 02 Civ. 865 (RMB)(FM), 2004 U.S. Dist. LEXIS 9913, at *48 (S.D.N.Y. May 18, 2004).

Similar to the standards of Section 17(a)(2)-(3), pleading a claim for a violation of Rule 14a-9 requires pleading negligence. *See, e.g., Gruss v. Curtis Publishing Co.*, 534 F.2d 1396, 1403 (2d Cir. 1976) (reversed and remanded with instruction to dismiss complaint; "we cannot sustain the district court's conclusion that failure to [include certain language in the Proxy Statement] constituted negligence by [defendant] – the standard of culpability we have held applicable as a minimum in damage suits for violations of the Proxy Rules"); *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 409 n. 95 (2d Cir. 2016) (same).

## C. The Complaint Does Not Allege Any Actionable Negligent Conduct By Aurovsky

The gravamen of the SEC's allegations against Aurovsky is that he violated the securities laws by (i) negligently failing to ensure that the Proxy Statement did not contain material misstatements or omissions of fact, and (ii) negligently signing management representation, submitted by ACSI to its private auditors, that contain the same material omissions. (Compl. ¶¶ 221, 225-226.)

Generally, "negligence is 'the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances.'" *Wey*, 246 F. Supp. 3d at 913. The SEC must plead with particularity and provide a defendant notice of whether his conduct was actionable because of this general negligence standard, or because of some heightened

standard.  *SEC v. Pocklington*, No. EDCV 18-701 JGB (SPx), 2018 U.S. Dist. LEXIS 227362, at *49-50 (C.D. Cal. Sept. 10, 2018).  As set forth below, the Complaint is legally deficient because the allegations establish – as a matter of law, regardless of the negligence standard applied – that Aurovsky did not act unreasonably in connection with the purported material misrepresentations or omissions that are the subject the case.  *See, e.g.*, *Shanahan*, 646 F.3d at 546 (granting judgment as a matter of law dismiss Section 17(a)(2) and (3) claims where SEC failed to adduce evidence that defendant "violated an applicable standard of reasonable care").

The SEC pleads – very generally – that Aurovsky had a "duty as a present and future director, officer, and controlling shareholder of Ability, and Ability Inc., and as one of the primary beneficiaries of the proposed merger, to ensure that the proxy materials fully and fairly furnished all material facts and did not contain any material misstatements or misleading omissions about Ability …."  Compl. ¶¶ 177, 221.  The SEC's contention is wrong:  it is not the law that a "future" officer or director of a company, or even a present officer or director, have a free-standing duty to ensure that every word of their company's securities filings are free of misstatements or omissions.  As detailed below, some actual involvement with those alleged misstatements or omissions is necessary for liability to attach.

### 1. Aurovsky Is Not Alleged To Have Made Any Statements About, Or Provided Any Information About, The Backlog, Pipeline, ULIN, Or The Latin American Police Agency

To sustain its claims, the SEC must allege that Aurovsky negligently made a material misrepresentation or omission (or, at a minimum, was involved in preparing such statements).  But what the Complaint does <u>not</u> allege about Aurovsky says more than what it does.  The Complaint does not allege that Aurovsky made any statements about, or was involved in providing information to Cambridge about, the Backlog, Pipeline, ULIN, or the Latin American Police

Case 1:19-cv-05705-MKV   Document 46   Filed 01/24/20   Page 27 of 31

Agency orders.  Nor does the SEC allege that Aurovsky was charged with the responsibility or duty to review and independently verify any statements made by Hurgin or ACSI about those particular topics.  To the contrary, the Complaint confirms that Aurovsky did not meet or substantively speak with Cambridge or its advisors about the relevant alleged misstatements or omissions, did not attend the road show, did not help prepare the merger documents, did not review the merger documents, and did not exercise any authority over the approval and dissemination of those statements.

Because the SEC fails to allege that Aurovsky made any of the purported misrepresentations or omissions of fact, was involved in the formation or dissemination of such statements, was charged with reviewing such statements, or provided any information (even indirectly) that formed the basis for such statements, he cannot – as a matter of law – be held liable for violations of Section 17(a) and Rule 14a-9.  *See Patel*, 2008 U.S. Dist. LEXIS 23553, at *40-41 (dismissing Section 17(a)(2) and (a)(3) claims where "SEC has failed to plead facts sufficient to support a conclusion that [defendant] prepared a fraudulent financial statement or, in any other way, made an untrue statement or material omission");  *Roanoke Tech. Corp.*, 2006 U.S. Dist. LEXIS 59835, at *8 (dismissing SEC complaint where complaint failed to allege defendant made a false or misleading statement of a material fact, omitted a material fact or had a duty to disclose).  The SEC's attempt to ascribe responsibility to Aurovsky for statements made by others, over whom he had no authority, review, or control, should be rejected.

### 2. The Complaint Contains No Allegations That Aurovsky Knew Or Should Have Known That The Five Alleged Misstatements Or Omissions Were Actually Misstatements Or Omissions

The SEC seeks to hold Aurovsky liable for statements that others made about the Backlog, Pipeline, ULIN, and Latin American Police Agency that the SEC alleges Aurovsky reasonably

should have known were false or misleading.  Yet, the Complaint contains no non-conclusory allegations to support an inference that Aurovsky knew, or even should have known, ACSI's statements about those topics were not correct.  *See Shanahan*, 646 F.3d at 546 (finding director not negligent where he had "no personal expertise" in securities matters, the company "complied with the accounting principles known at that time to apply," and "no one alerted [defendant] to any possible concern").

First, the Complaint does not allege that Aurovsky was responsible for evaluating, forming, or analyzing ACSI's Backlog or Pipeline; to the contrary, the SEC contends that Hurgin was solely responsible for generating and sharing ACSI's financial forecasts with Cambridge.  (Compl. ¶¶ 140-146.)  Second, as to ULIN, the SEC alleges that "Aurovsky knew about the ULIN reseller agreement, including its three year term, revenue sharing, and penalty terms," Compl. ¶ 128, but failed to disclose that agreement to Cambridge, Prometheus, Economic Partners, or to Cambridge's shareholders and prospective investors, *id.* ¶ 130.  But the SEC's allegation of Aurovsky's knowledge is purely conclusory, and the SEC's allegation that Aurovsky – himself, personally – had any duty to disclose any information is non-existent.  Indeed, the Complaint makes clear that Hurgin – not Aurovsky – is alleged to have entered and signed the ULIN reseller agreement, and made representations about the product.  (Compl. ¶ 129.)  Again, without being alleged to have played any role in any alleged misstatement or omission, and lacking any alleged basis to have known the details about that topic, Section 17(a)(2) or (3) liability cannot stand against Aurovsky.

Third, regarding the Latin American Police Agency, the Complaint only alleges (conclusorily) that Aurovsky knew of alleged personnel turnover.  (Compl. ¶ 135.)  The Complaint does not allege that Aurovsky knew (or could have known) that such turnover could possibly affect Ability's capacity to recognize revenue from that customer, or what the status of any agreements

with that customer were.  Nor does the Complaint allege there was any way that Aurovsky even could have known that such personnel turnover would lead to the cancellation of agreements.

Finally, for the same reasons, the SEC's allegation that Aurovsky's management representation letter negligently omitted disclosure of these faults is equally legally deficient.  The SEC's reliance on conclusory allegations that Aurovsky knew, or should have known, certain information based on his position as Chief Technology Officer of ACSI (Compl. ¶¶ 151, 173, 175, 176, 177) are legally insufficient to transform an otherwise passive officer into the maker of a statement (or other liable actor) for purposes of securities violations.  *See, e.g.*, *Bd. of Trustees of City of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) ("[C]ourts in this District have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight.") (citations omitted), *aff'd sub. nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 574 (S.D.N.Y. 2014) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.").

The SEC makes no allegations that Aurovsky had a specific duty to address any of the specific issues he is alleged to have negligently failed to address.  The SEC merely recites a boilerplate general allegation that, to the extent Aurovsky was not involved in the Proxy Statement or related proxy materials, "he did not act with reasonable care in violation of his duty as a present and future director, officer, and controlling shareholder of Ability, and Ability Inc., and as one of the primary beneficiaries of the proposed merger."  (Compl. ¶¶ 177, 221.)  The SEC's overly general allegation should be rejected.  The Complaint alleges no legal duty owed by Aurovsky to the investors of Cambridge that would require him to undertake such an extraordinary activity.  To the contrary, Aurovsky, then only the Chief Technology Officer of ACSI, a small Israeli private

company, had no personal responsibility for any and all statements made by Cambridge in every securities filing made by Cambridge.

While *Janus* has been held not to apply directly to Sections 17(a)(2) or (3) (*see, e.g.*, *SEC v. Big Apple Consulting USA, Inc*., 783 F.3d 786, 796 (11th Cir. 2015)), as shown by *Patel*, there still must be <u>some</u> particularized basis for liability.  It is insufficient for the SEC merely to allege that there was some scheme, and as a result Aurovsky received money.  There must be some allegations sufficient to support a conclusion that Aurovsky <u>himself</u> "prepared a fraudulent financial statement or, in any other way, made an untrue statement or material omission."  *Patel*, 2008 U.S. Dist. LEXIS 23553, at *40-41.  As the Supreme Court recently reaffirmed in *Lorenzo*, its ruling in *Janus* would "preclude liability" where "an individual neither makes nor disseminates false information – provided, of course, that the individual is not involved in some other form of fraud."  *Lorenzo*, 139 S. Ct. at 1099.  Here, there is no particularized allegation that Aurovsky was involved in any "other form of fraud," because the Complaint makes clear that Aurovsky was fundamentally not involved in the purported misstatements or omissions that the SEC alleges.

## III.   AUROVSKY RESPECTFULLY JOINS THE ARGUMENTS OF HURGIN THAT NONE OF THE ALLEGED MISSTATEMENTS OR OMISSIONS ARE ACTIONABLE, THE SEC'S CLAIMS FOR SCHEME LIABILITY FAIL, AND THE SEC'S DISGORGEMENT CLAIMS MUST BE DISMISSED

Even if the Court were to find that Aurovsky could be held liable for purported misstatements or omissions that he did not make, was not involved in forming or disseminating, and had no reasonable basis to believe were anything but true, the Complaint is still legally deficient for the reasons set forth in the Hurgin Brief.  For brevity, Aurovsky joins Hurgin's position that the alleged misstatements or omissions attributed to Hurgin or the Company are not actionable under the securities laws, that the SEC's claims for scheme liability fail, and that the SEC's claim for disgorgement should be dismissed.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, the Complaint against Aurovsky should be dismissed with prejudice.

Date:   January 24, 2020

Respectfully submitted,

MORRISON COHEN LLP

<u>/s/ Jason Gottlieb</u>
Jason Gottlieb
Edward P. Gilbert
Daniel C. Isaacs
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
jgottlieb@morrisoncohen.com
egilbert@morrisoncohen.com
disaacs@morrisoncohen.com

*Attorneys for Defendant Alexander Aurovsky*

24