DONALD W. SEARLES, Bar Code: DS0898
JENNIFER CALABRESE (*pro hac vice application pending*)
ANSU BANERJEE (*pro hac vice application pending*)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
444 S. Flower Street, Suite 900
Los Angeles, CA 90071
(323) 965-3998

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br><br><br>     vs.<br><br>ANATOLY HURGIN, ALEXANDER AUROVSKY, ABILITY, INC. AND ABILITY COMPUTER SOFTWARE INDUSTRIES, LTD.<br><br>           Defendants. | Case No. 1:19-cv-05705-MKV |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PRELIMINARY INJUNCTION TO FREEZE CERTAIN ASSETS AND TO RESTRAIN AND ENJOIN DEFENDANTS FROM DISSIPATING ASSETS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 4

    I.     THE SEC SEEKS A LIMITED PRELIMINARY INJUNCTION IN THE
        FORM OF AN ASSET FREEZE OVER SPECIFIC FUNDS THAT ARE
        AT RISK OF DISSIPATION ................................................................................. 4

        A.    Standard for an Asset Freeze ..................................................................... 4

        B.    The SEC Has Demonstrated a Concern that Defendants Will
               Dissipate Assets ........................................................................................ 6

        C.    The SEC Has Demonstrated a Likelihood of Success on Its Claims
               or a Basis to Infer that Defendants Violated the Securities Laws.............. 7

               1.    Hurgin's violation of Section 10(b) of the Exchange Act
                     and Rule 10b-5 ............................................................................... 7

                     a.    Hurgin's false statements and omissions in violation
                           of Rule 10b-5(b)................................................................. 8

                     b.    Hurgin's fraudulent scheme and course of business
                             in violation of Rule 10b-5(a) & (c) .................................... 10

               2.    Hurgin and Aurovsky's violations of Section 17(a) of the
                     Securities Act ............................................................................... 11

                 3.    Hurgin's and Aurovsky's violation of Section 14(a) of the
                     Exchange Act and Rule 14a-9.................................................... 13

CONCLUSION................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Aaron v. SEC*,
    446 U.S. 680 (1980) ................................................................................................. 7

*Chris-Craft Industries, Inc. v. Independent Stockholders Committee*,
    354 F. Supp. 895 (D. Del. 1973) ................................................................... 15, 16

*Cort v. Ash*,
    422 U.S. 66 (1975) ................................................................................................. 13

*Cyber Media Group v. Island Mortg. Network, Inc.*,
    183 F. Supp.  2d 559 (E.D.N.Y. 2002) ................................................................ 9

*Dekalb Cnty. Pension Fund v. Transocean Ltd.*,
    817 F. 3d 393 (2d Cir. 2016) ............................................................................... 15

*Elkind v Liggett & Myers, Inc.*,
    635 F.2d 156 (1980) .............................................................................................. 16

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ............................................................................................... 7

*Goldman v. Belden*,
    754 F.2d 1059 (2d. Cir. 1985) ............................................................................ 16

*Gould v. American Hawaiian S.S. Co.*,
    351 F. Supp. 853 (D. Del. 1972) ......................................................................... 16

*In re Stillwater Partners Inc. Litig.*,
    853 F. Supp. 2d 441 (S.D.N.Y. 2012) ............................................................... 10

*J.I. Case Co. v. Borak*,
    377 US. 426 (1964) ............................................................................................... 13

*Lewis v. Brynes*,
    538 F. Supp. 1221 (S.D.N.Y. 1982) ....................................................... 14, 15, 16

*Lewis v. Dankster*,
    68 F.R.D. 184 (S.D.N.Y. 1975) .......................................................................... 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006) .................................................................................. 4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ........................................................................................... 9

*SEC v. Aragon Capital Advisors, LLC*,
07 Civ. 919 (FM), 2011 U.S. Dist. LEXIS 82530 (S.D.N.Y. July 26, 2011) .................... 6

*SEC v. Big Apple Consulting USA, Inc.*,
783 F.3d 786 (11th Cir. 2015) ........................................................................................ 12

*SEC v. Cavanaugh*,
1 F. Supp. 2d 337 (S.D.N.Y. 1998) .................................................................................. 7

*SEC v. CKB168 Holdings, Ltd.*,
210 F. Supp. 3d 421 (E.D.N.Y. 2016) ............................................................................ 10

*SEC v. Dorozhko*,
606 F. Supp. 2d 321 (S.D.N.Y. 2008) .............................................................................. 4

*SEC v. Falstaff Brewing Corp.*,
629 F.2d 62 (D.C. Cir. 1980) .................................................................................... 14, 15

*SEC v. Farmer*,
2015 U.S. Dist. LEXIS 136702 (S.D. Tex. Oct. 7, 2015) ................................................ 11

*SEC v. Gonzalez de Castilla*,
145 F. Supp. 2d 402 (S.D.N.Y. 2001) ........................................................................... 5, 6

*SEC v. ITT Educ. Servs., Inc.*,
303 F. Supp. 3d 746 (S.D. Ind. 2018) ....................................................................... 10, 12

*SEC v. Jankovic*,
15 Civ. 1248 (KPF), 2017 U.S. Dist. LEXIS 40573 (S.D.N.Y. Mar. 21, 2017) ............. 11

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011) ............................................................................. 10

*SEC v. Lee*,
720 F. Supp. 2d 305 (S.D.N.Y. 2010) ............................................................................. 10

*SEC v. Management Dynamics, Inc.*,
515 F.2d 801 (2d Cir. 1975) ............................................................................................. 4

*SEC v. Martino*,
98 Civ. 3446 (MP), 2002 U.S. Dist. LEXIS 29266 (S.D.N.Y. May 21, 2002) ................. 5

*SEC v. Mercury Interactive, LLC*,
No. CV-07-2822,-WHA, 2011 U.S. Dist. LEXIS 134580
(N.D. Cal. Nov. 22, 2011) ............................................................................................... 14

*SEC v. Obus*,
693 F.3d 276 (2d. Cir. 2012) ............................................................................................ 7

*SEC v. One Or More Unknown Traders in the Secs. Of Onyx Pharms., Inc.,*
  296 F.R.D. 241 (S.D.N.Y. 2013) ....................................................................... 5

*SEC v. Pentagon Capital Mgmt. PLC,*
  725 F.3d 279 (2d Cir. 2013)............................................................................... 7

*SEC v. PlexCorps.,*
  17 Civ. 7007 (CBA), 2017 U.S. Dist. LEXIS 206145 (E.D.N.Y. Dec. 14, 2017)............. 5

*SEC v. Santillo,*
  18-CV-5491 (JGK), 2018 U.S. Dist. LEXIS 116290 (S.D.N.Y. July 11, 2018) ............... 5

*SEC v. Stoker,*
  865 F. Supp. 2d 457 (S.D.N.Y. 2012)............................................................... 12

*SEC v. Syron,*
  934 F. Supp. 2d 609 (S.D.N.Y. 2013)............................................................... 11

*SEC v. Unifund SAL,*
  910 F. 2d 1028 (2d Cir. 1990)........................................................................... 5

*SEC v. Waldman,*
  17 Cv. 2088 (RMB), 2018 U.S. Dist. LEXIS 103249 (S.D.N.Y. Apr. 20, 2018) ............. 6

*SEC v. Wey,*
  246 F. Supp. 3d 894 (S.D.N.Y. 2017)....................................................... 10, 11

*Smith v. SEC,*
  653 F. 3d 121 (2d Cir. 2011)........................................................................ 4, 5

*TSC Industries, Inc. v. Northway,*
  426 U.S. 438 (1976).................................................................................. 7, 16

*Wechsler v. Steinberg,*
  733 F. 2d 1054 (2d Cir. 1984)........................................................................... 8

*Wilson v. Great Am. Indus., Inc.,*
  855 F. 2d 987 (2d. Cir. 1988)......................................................................... 15

*Yamamoto v. Omiya,*
  564 F.2d 1319 (9th Cir. 1977) ........................................................................ 14

## FEDERAL STATUTES

**Securities Act of 1933**

Section 17(a)
  [15 U.S.C. § 77q(a)]........................................................................... 7, 11, 16

Section 17(a)(1)
  [15 U.S.C. § 77q(a)(1)] ................................................................................. 11, 12

Section 17(a)(2)
  [15 U.S.C. § 77q(a)(2)] ............................................................................. 7, 11, 12

Section 17(a)(3)
  [17 C.F.R. § 77q(a)(3)] ............................................................................. 7, 11, 12

**Securities Exchange Act of 1934**

Section 10(b)
  [15 U.S.C. § 78j(b)] ............................................................................ 7, 10, 12, 16

Section 14(a)
  [15 U.S.C. § 78n(a)] ............................................................................ 7, 13, 14, 16

## <u>FEDERAL REGULATIONS</u>

Rule 10b-5
  [17 C.F.R. § 240.10b-5] ...................................................................................... 7

Rule 10b-5(a)
  [17 C.F.R. § 240.10b-5(a)] ................................................................................ 12

Rule 10b-5(c)
  [17 C.F.R. § 240.10b-5(c)] ................................................................................ 12

Rule 14a-9
  [17 C.F.R. § 240.14a-9] ................................................................................. 7, 13

# INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") brings this motion for a preliminary injunction to freeze certain assets and to restrain and enjoin Defendants Ability Inc. ("Ability"), Ability Computer & Software Industries, Ltd. ("ACSI"), Anatoly Hurgin ("Hurgin"), and Alexander Aurovsky ("Aurovsky") (collectively "Defendants") from dissipating assets. This emergency motion is necessitated by Ability's recent filing of a bankruptcy petition in Israel, where it seeks, among other things, an order voiding the Put Option Escrow Agreement so as to allow it to access those funds to pay creditors, including Hurgin and Aurovsky.

In the judgment entered by this Court against Ability on December 10, 2019, it was ordered, with respect to the Put Option Escrow Agreement, to which Ability, Hurgin and Aurovsky are parties, pursuant to which $11,850,000.00 in cash was deposited into an escrow account at The Bank of Leumi Le-Israel Trust Company, Ltd.[1] (the "Escrow Agent"), that neither Ability, nor any of its directors, officers, agents, servants, employees or attorneys, or those in active concert or participation with any of them shall, shall: (a) accept delivery of a put option, or otherwise purchase all or a portion of the put options held by Hurgin and/or Aurovsky pursuant to the Put Option Escrow Agreement; or (b) instruct the Escrow Agent to release the cash set forth in the Put Option Escrow Agreement and held by the Escrow Agent for an exercise of a put option by either Hurgin or Aurovsky pending the final resolution of this matter. Dkt. No. 37, § IV. The $11,850,000 are originally investor funds held in escrow after the merger between Ability and Cambridge Capital Acquisition Corporation. The purpose of Section IV of the Ability judgment is to preserve investor funds during the pendency of this action for the

---

[1] Bank Leumi Le-Israel Trust Company Ltd is now known as Hermetic trust services (1939) Ltd.

payment of any monetary relief that may be ordered against Defendants, including disgorgement with prejudgment interest.

In the parties' joint letter submitted to the Court in advance of the Initial Pretrial Conference on October 22, 2020, the SEC discussed Section IV of the Ability judgment, and stated that it is the SEC's position that Hurgin and Aurovsky are bound by the terms of the judgment against Ability, as they are officers and directors of Ability.  Dkt. No. 62 at 4.  The SEC noted that Hurgin and Aurovsky have refused to state whether they are so bound, and the SEC reserved the right to seek an order from this Court freezing those funds, so as to preserve the collectability of at least a portion of the monetary remedies it will seek in this action once liability is established.  *Id*.  The Defendants responded by stating: "The Individual Defendants respectfully submit that the Court's judgment against Ability speaks for itself, and that there is no need to take the Court's time on issues when there is no imminent threat of changed circumstances."  *Id*.

There now exists "an imminent threat of changed circumstances."  On Monday July 19, 2021, counsel for the individual defendants sent counsel for the SEC a copy of the motion that Ability and its subsidiaries, including ACSI, filed in a bankruptcy court in Israel seeking a stay of proceedings against it, but not seeking a stay of this action.  Declaration of Donald W. Searles in Support of Plaintiff's Motion for Preliminary Injunction ("Searles Decl."), ¶ 3.  The SEC was never formally served with any of Ability's bankruptcy pleadings.  *Id.*  Since the pleadings were in Hebrew, the SEC did not learn until today, when it conferred with local counsel in Tel Aviv, that Ability is requesting, among other things, to terminate the put option agreement.  *Id*., *see also* Declaration of Gilad Porat in Support of Plaintiff Securities and Exchange Commission's *Ex Parte* Application for an Asset Freeze ("Porat Decl.").  In the event the put option agreement is

terminated, the amount in escrow will be released to Ability, and will become available for the repayment of outstanding debts of Ability and related companies, within the framework of a debt settlement arrangement, which will be formulated.  Perot Decl. ¶ 8.  Hurgin and Aurovsky are substantial creditors of Ability, and the total amount owed to them is approximately $2.48 million.  *Id.* ¶ 8.  The hearing on Ability's motion to terminate the put option agreement is set for tomorrow, July 21, 2021.

In light of these changed circumstances, there is a substantial risk that should the put option agreement be terminated, the escrowed funds will be dissipated and used, in significant part, to pay Hurgin and Aurovsky.  This planned course of conduct, of which the SEC just learned, violates the spirit, if not the terms, of Ability's judgment.  Moreover, the escrowed funds represent proceeds from the Ability-Cambridge merger, were derived from investor funds, and should be preserved to allow for an order of disgorgement for the benefit of investors, rather than using those monies to pay Ability's creditors, including Hurgin and Aurovsky.

Specifically, the SEC requests the following relief: (1) that the escrowed fund held by the Escrow Agent in the put option escrow account, which includes the $11,850,000 plus accrued interest, be frozen until further Order of this Court; and (2) that until the final disposition of this action, Ability, ACSI, Hurgin and Aurovsky, and their officers, directors, agents, servants, employees, attorneys, trustees, and those persons in active concert or participation with them, be restrained and enjoined from making any withdrawal, pledge, encumbrance, assignment, dissipation, concealment or other disposal or use of any of the funds in the put option escrow account.

## ARGUMENT

I. **THE SEC SEEKS A LIMITED PRELIMINARY INJUNCTION IN THE FORM OF AN ASSET FREEZE OVER SPECIFIC FUNDS THAT ARE AT RISK OF DISSIPATION**

### A.    Standard for an Asset Freeze

In seeking to freeze the approximate $12 million in merger proceeds currently escrowed by the Escrow Agent for the benefit of Hurgin and Aurovsky, and to enjoin Ability, ACSI, Hurgin and Aurovsky from dissipating those funds, the SEC is requesting narrowly tailored ancillary relief to continue to preserve the status quo and to facilitate at least partial enforcement of any disgorgement remedy that may be ordered in the event a violation of the securities laws is established at trial.

Ordinarily, to obtain a preliminary injunction, "a plaintiff must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *SEC v. Dorozhko*, 606 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d. Cir. 2006)). But the SEC is not an ordinary private litigant; rather, it is "a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *Id.* (quoting *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975)). As such, in seeking a preliminary injunction against violations of the securities laws, the SEC need only make a substantial showing of likelihood of success on the merits and the risk of repetition. *Smith v. SEC*, 653 F. 3d 121, 127-28 (2d Cir. 2011). A "'substantial showing of likelihood of success" is a sliding scale standard; the Commission "should be obliged to make a more persuasive showing of its entitlement to a preliminary injunction the more onerous … the burdens of the injunction it

4

seeks.'" *SEC v. PlexCorps*., 17 Civ. 7007 (CBA), 2017 U.S. Dist. LEXIS 206145, *3 (E.D.N.Y. Dec. 14, 2017) (quoting *Smith v. SEC*, 653 F.3d at 128).

Here, all that the SEC seeks by way of its motion is an asset freeze over the escrowed funds and an order preventing Ability, ACSI, Hurgin and Aurovsky from dissipating those funds pending the final resolution of this matter.  As the Second Circuit has observed, "unlike an injunction against securities law violations, an asset freeze order does not place the defendants at risk of contempt in all future securities transactions.  It simply assures that any funds that may become due can be collected."  *SEC v. Unifund SAL*, 910 F. 2d 1028, 1041 (2d Cir. 1990). Because of its limited scope, an asset freeze order may issue even in circumstances where the elements required to support a traditional SEC injunction have not been established.  *Id*., *see also SEC v. One Or More Unknown Traders in the Secs. Of Onyx Pharms., Inc.*, 296 F.R.D. 241, 255 (S.D.N.Y. 2013).

Thus, a district court may issue an asset freeze if the SEC demonstrates:  (1) a concern that the defendant will dissipate the assets within the defendant's control or will transfer the assets beyond the United States, and (2) either a likelihood of success on the merits or a basis to infer that the defendant violated the securities laws.  *SEC v. Santillo*, 18-CV-5491 (JGK), 2018 U.S. Dist. LEXIS 116290, *3 (S.D.N.Y. July 11, 2018); *SEC v. One Or More Unknown Traders in the Secs. Of Onyx Pharms., Inc.*, 296 F.R.D. at 255; *SEC v. Martino*, 98 Civ. 3446 (MP), 2002 U.S. Dist. LEXIS 29266, *11 (S.D.N.Y. May 21, 2002); *SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 415 (S.D.N.Y. 2001).  In determining whether an asset freeze or other relief is appropriate, the court may assess any relevant circumstance to determine the coverage, terms, and duration of the asset freeze.  *SEC v. Unifund SAL*, 917 F. 2d at 99.   This standard is easily met in this action.

**B.     The SEC Has Demonstrated a Concern that Defendants Will Dissipate Assets**

Defendants Hurgin and Aurovsky are citizens and residents of another county, Israel, and the $12 million in currently escrowed merger proceeds that the SEC seeks to have frozen are also located in Israel.  These facts alone demonstrate a concern that defendants may dissipate those funds.  *See, e.g., SEC v. Waldman*, 17 Cv. 2088 (RMB), 2018 U.S. Dist. LEXIS 103249, *3 (S.D.N.Y. Apr. 20, 2018) (SEC has proven obvious concern defendant might dissipate assets, as defendant is a citizen and resident of a foreign country and has access to non U.S. bank accounts); *accord SEC v. Aragon Capital Advisors, LLC*, 07 Civ. 919 (FM), 2011 U.S. Dist. LEXIS 82530, *21 (S.D.N.Y. July 26, 2011); *SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d at 420.

The SEC has attempted to address its concerns about the dissipation of assets by including language in the judgment entered against Ability (which Ability consented to) restraining and enjoining Ability, and its directors and officers (including Hurgin and Aurovsky) from: (a) from accepting delivery of a put option, or otherwise purchase all or a portion of the put options, held by Hurgin and/or Aurovsky pursuant to the Put Option Escrow Agreement; or (b) instructing the Escrow Agent to release the cash set forth in the Put Option Escrow pending the final resolution of this matter.  Dkt. No. 37, Section IV.

Section IV of the Court's judgement would be rendered meaningless if Ability's motion to terminate the put option agreement were to be granted.  If that motion were to be granted, the escrowed funds would revert to Ability, to be used for day-to- expenses, and to pay its creditors, of which Hurgin and Aurovsky are among its largest.  Accordingly, the SEC has clearly satisfied the first requirement for an asset freeze: a concern that the defendants will dissipate the assets within their control.

C. **The SEC Has Demonstrated a Likelihood of Success on Its Claims or a Basis to Infer that Defendants Violated the Securities Laws**

The SEC's complaint alleges that Hurgin violated Section 17(a) of the Securities Act, Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5 and 14a-9 thereunder, and that Aurovsky violated Sections 17(a)(2) and 17(a)(3) of the Securities Act and Section 14(a) of the Exchange Act and Rule 14a-9. As the Court found, in denying Hurgin's and Aurovsky's motions to dismiss, the SEC has clearly pleaded facts that, if true, establish Hurgin's and Aurovsky's violations of the securities laws. Dkt. No. 59.

1. **Hurgin's violation of Section 10(b) of the Exchange Act and Rule 10b-5**

Exchange Act Section 10(b) and Rule 10b-5 thereunder prohibits, in connection with the purchase or sale of securities, the use of any device, scheme, or artifice to defraud; making any untrue statement of material fact, or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and any act, practice or course of business that operates as a fraud or deceit upon any person. *SEC v. Cavanaugh*, 1 F. Supp. 2d 337, 375-76 (S.D.N.Y. 1998). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *See TSC Industries, Inc. v. Northway*, 426 U.S. 438, 449 (1976). Scienter is a necessary element of a Section 10(b) and Rule 10b-5 violation. *Aaron v. SEC*, 446 U.S. 680, 691 (1980); *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013). The Supreme Court has defined scienter as an "intent to deceive, manipulate or defraud" or "knowing or intentional misconduct." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). The Second Circuit has held that reckless conduct – *i.e.*, "conduct which is highly unreasonable and which presents an extreme departure from the standards of ordinary care" – satisfies the scienter requirement. *SEC v. Obus*, 693 F.3d 276, 286 (2d. Cir. 2012). "Proof of scienter need not be

direct, but may be a matter of inference from circumstantial evidence." *Wechsler v. Steinberg*, 733 F. 2d 1054, 1058 (2d Cir. 1984).

>       a.      **Hurgin's false statements and omissions in violation of Rule 10b-5(b)**

Hurgin made several false and misleading statements and omissions to Cambridge's shareholders in connection with the solicitation of proxies in support of the merger transaction, each of which would be clearly material to a reasonable investor, and which Hurgin knew, or was reckless in not knowing, were misleading.

First, he made false claims and failed to disclose material information about ULIN.  In the November 2015 roadshow presentation, he falsely claimed that Ability developed and owned a "game changing" product called ULIN; Hurgin specifically told prospective investors at the roadshow that Ability was the "only owner" of this new product.  These statements were affirmatively misleading, as he failed to disclose the fact that Ability was just a reseller of that product under a three-year reseller agreement, and was required, under an undisclosed agreement, to share 50% of any revenue from ULIN sales with the real owner of the product and to pay a significant monetary penalty if Ability failed to sell a specific minimum amount each year.  Ability's portion of the Proxy Statement was equally misleading with respect to ULIN.  While it touted "[o]ur ULIN" as a product that was "introduced in November 2015," the Proxy Statement failed to disclose that Ability did not own ULIN or the reseller agreement and its revenue sharing and penalty terms.

Second, Hurgin made false and misleading statements and failed to disclose material information about Ability's prospects with its largest customer, the police agency in Latin America.  The Proxy Statement and November 2015 roadshow presentation both emphasized this business, referring to the expected revenue from 52 prisons, the "significant increase in

revenues" from "four large projects" and the expectation that "future projects in this region are likely to continue."  There was no disclosure, however, at the roadshow or in the Proxy Statement that Ability had only oral agreements for most of its backlog from the police agency in Latin America or that those agreements were with members of the police agency who had been fired.  Instead the proxy materials touted a revenue forecast of $108 million for FY 2016, mentioning only the possibility of a short, one-quarter "delay" of revenue for an unidentified customer.

Third, Hurgin provided shareholders with misleading forecasts in the November 2015 roadshow and Proxy Statement.  The Supreme Court has recognized that financial forecasts can give rise to liability if:  (i) the person responsible for the forecast does not actually believe the forecast, (ii) if the forecast includes an untrue embedded statement of fact that is material, or (iii) if the forecast omits material information so that it would be misleading to a reasonable investor when considered in context with the omitted material.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1333, 1324-27 (2015); *see also, Cyber Media Group v. Island Mortg. Network, Inc*., 183 F. Supp.  2d 559, 572 (E.D.N.Y. 2002).

Hurgin's FY 2016 forecast is clearly actionable under at least prongs (ii) and (iii) of *Omnicare*.  The November 2015 roadshow PowerPoint touted a $148 million backlog and pipeline for FY 2016, and Hurgin orally told investors that with probability-weighting this amounted to about $100 million in estimated revenue for FY 2016.  But these figures included untrue embedded facts, that Hurgin was aware of, which seriously undermined Ability's FY 2016 revenue forecast.  First, that forecast included $20 million in revenue from the sale of ULIN without accounting for Ability having to share half of that revenue with ULIN's real owner.  Second, the forecast included approximately $22 million in "backlog" orders for sales to

the police agency in Latin America when Ability's orders from that agency were verbal and with people who had been fired.  Because Ability's $108 million revenue forecast for 2016 in the roadshow and the Proxy Statement was based on and supported by these overstated backlog and pipeline figures, the forecast itself was materially misleading.

Finally, because the proxy statement sought approval of a merger through the exchange of stock, Hurgin's fraud was "in connection with the purchase or sale" of a security under Section 10(b) of the Exchange Act.  *In re Stillwater Partners Inc. Litig*., 853 F. Supp. 2d 441, 458, n. 144 (S.D.N.Y. 2012).

>    **b.**    **Hurgin's fraudulent scheme and course of business in violation of Rule 10b-5(a) & (c)**

Claims for scheme liability "hinge[] on the performance of an inherently deceptive act that is distinct from an alleged misstatement."  *SEC v. Wey*, 246 F. Supp. 3d 894, 917 (S.D.N.Y. 2017) (quoting *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011)); *see also SEC v. CKB168 Holdings, Ltd*., 210 F. Supp. 3d 421 (E.D.N.Y. 2016)); *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010).

In addition to the misrepresentations and omissions discussed above, Hurgin undertook several deceptive acts to give investors a false appearance about the company's prospects. Hurgin entered into and signed the reseller agreement with Telcostar and knew that it provided for revenue sharing and penalty payments.  But Hurgin did not disclose the agreement and concealed it from various parties working on the merger.  Hurgin also signed the false management representation letters to the auditors in connection with the Form S-4 registration statement.  *See SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d 746, 764-65 (S.D. Ind. 2018) (deception of the auditors is a separate deceptive act for purposes of Rule 10b-5(a) and (c) claim).

### 2.     Hurgin and Aurovsky's violations of Section 17(a) of the Securities Act

Section 17(a) of the Securities Act prohibits fraud "in the offer or sale" of securities. Violations of Section 17(a)(1) require a showing of scienter; violations of 17(a)(2) and (3) may be established by a showing of negligence. *SEC v. Wey*, 246 F. Supp. 3d at 910.  Here, the SEC alleges that Hurgin violated all three subsections of Section 17(a), and that Aurovsky, acting at least negligently, violated Sections 17(a)(2) and (3).  Negligence is typically defined under these provisions as "the failure to use reasonable care, which is the degree of care that a reasonable careful person would use under like circumstances." *SEC v. Jankovic*, 15 Civ. 1248 (KPF), 2017 U.S. Dist. LEXIS 40573, *38 (S.D.N.Y. Mar. 21, 2017).

Section 17(a)(2) of the Securities Act prohibits any person in the offer or sales of securities from, directly or indirectly, "obtain[ing] money or property by means of any untrue statement of a material fact or any omission to state a material fact …."  Hurgin and Aurovsky can be held liable under Section 17(a)(2) because they each *directly* received about $9 million cash in compensation for the merger, plus a $6 million put option.  *See SEC v. Jankovic*, 2017 U.S. Dist. LEXIS 40573, * 39-40 (noting disagreement among district courts in this district as to whether a defendant must personally gain money or property from the fraud under Section 17(a)(2)).  They obtained this money by means of false statements and omissions in the November 2015 roadshow and the Proxy Statement described above.  *See SEC v. Farmer*, 2015 U.S. Dist. LEXIS 136702 (S.D. Tex. Oct. 7, 2015) ("by means of" merely requires some "causal relationship" between the fraudulent statement or omission and the defendant's acquisition of money.") (citing *SEC v. Syron*, 934 F. Supp. 2d 609, 637 (S.D.N.Y. 2013)).  Finally, although, Aurovsky, unlike Hurgin, cannot be deemed to have "made" these statements and omissions, there is no requirement to establish that he was the maker of the statements and omissions.  That

he obtained money by means of the fraud is sufficient.  *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015); *see also SEC v. Stoker*, 865 F. Supp. 2d 457, 465 (S.D.N.Y. 2012).

In addition to the misstatements and omissions that are attributable to Hurgin for the SEC's Section 10(b) claim, Hurgin and Aurovsky can also be held liable under Section 17(a)(2) for the misleading Prometheus fairness opinion, which was attached to the Proxy Statement (included in the S-4 registration statement).  That opinion falsely stated that all of Ability's $65.7 million in backlog orders were backed by signed purchase orders when, in fact, over 66% of that backlog was not supported by signed orders.  That was particularly false and misleading with respect to Ability's largest customer, the police agency in Latin America, since most of Ability's backlog orders were from this customer, and most of this backlog was based on oral agreements with managers who had been fired.  For purposes of Section 17(a)(2) liability, it is irrelevant that neither Hurgin nor Aurovsky authored the fairness opinion.  *See Big Apple Consulting*, 783 F.3d at 797.

Hurgin is liable for violation of Section 17(a)(1) for the same reasons he is liable under Rule 10b-5(a), as both subsections employ the same language and both require a showing of scienter.   Hurgin and Aurovsky are also liable for violation of Section 17(a)(3), the  language of which parallels Rule 10b-5(c), but which only requires a showing of negligence.  Like Hurgin, Aurovsky knew about the Telcostar agreement that provided for revenue sharing on sales of ULIN and substantial penalty payments if sales targets were not met, but failed to disclose that reseller agreement to various parties working on the merger.  Like Hurgin, Aurovsky also signed false management representation letters to the auditors in connection with the Form S-4 registration statement.  *See SEC v. ITT Educ. Servs., Inc.*, 303 F. Supp. 3d at 764-65.  Finally, as

discussed below, both Hurgin and Aurovsky had a duty to review and correct material

misstatements and omissions in the proxy materials, and were at least negligent in failing to do

so.

### 3.   Hurgin's and Aurovsky's violation of Section 14(a) of the Exchange Act and Rule 14a-9

Under Section 14(a) of the Exchange Act, it is unlawful for any person to solicit, or to

permit the use of his name to solicit, any proxy with respect to any security in violation of SEC

rules and regulations adopted for the protection of investors.  15 U.S.C. § 78n(a).  Exchange Act

Rule 14a-9 promulgated thereunder proscribes the solicitation of proxies by means of materially

false or misleading statements or omissions.  17 C.F.R. § 240.14a-9.  "The purpose of [Section

14(a)] is to prevent management or others from obtaining authorization for corporate action by

means of deceptive or inadequate disclosure in proxy solicitations."  *J.I. Case Co. v. Borak*, 377

US. 426, 431 (1964), abrogated on other grounds by *Cort v. Ash*, 422 U.S. 66 (1975).

Here, both Hurgin and Aurovsky solicited proxies and permitted their names to be used

to solicit proxies.  Both defendants solicited proxies as they (along with their company) were the

intended beneficiaries of the proposed merger that was the subject of the proxy statement, they

were each aware of the proxy statement and either read or had the opportunity to read it, and they

were both involved in the approval of the proposed merger as the two controlling shareholders of

Ability.  Furthermore, although Cambridge filed the Proxy Statement, it was effectively a joint

statement by Cambridge and Ability.  There were specific sections and information that were

expressly attributable to Ability, and Hurgin had the ultimate authority over its contents.  In

addition, Hurgin solicited proxies through his participation in the roadshows, and those roadshow

materials, including transcripts of those presentations at which Hurgin spoke, were included in

the proxy materials filed with the Commission.  Moreover, even if Aurovsky were to disclaim

any role in drafting the Proxy Statement, there is no requirement that he "make" the statements in the proxy to be held liable under Section 14(a). *See SEC v. Mercury Interactive, LLC*, No. CV-07-2822,-WHA, 2011 U.S. Dist. LEXIS 134580 *3 (N.D. Cal. Nov. 22, 2011) (*Janus* does not apply to Section 14(a) claims). As such, it cannot be reasonably contended both Hurgin and Aurovsky did not "solicit" proxies with that statement. *See Lewis v. Dankster*, 68 F.R.D. 184, 194 (S.D.N.Y. 1975).

It is also clear that they permitted their use of their names to solicit proxies. Pursuant to Rule 438 of the Exchange Act, Hurgin and Aurovsky each signed a form, attached as Exhibits 99.4 and 99.5 to Amendment No. 2 to the Registration Statement on Form S-4 of Cambridge Holdco, specifically consenting to the use of the names and to being named in the proxy statement. Hurgin's name was mentioned approximately 49 times in the definitive proxy statement filed on December 2, 2015; Aurovsky's name was mentioned approximately 29 times. Thus, there can be no question that both Hurgin and Aurovsky permitted the use of their names to solicit proxies.

The mere appearance of a person's name in a proxy, however, does not trigger liability under Section 14(a) for any misstatement appearing in the proxy. *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68 (D.C. Cir. 1980). Rather, there must be "a substantial connection between the use of the person's name and the solicitation effort." *Id.* (citing *Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977)); *see also Lewis v. Brynes*, 538 F. Supp. 1221, 1224 (S.D.N.Y. 1982). For example, this substantial connection can exist for director nominees listed in the proxy statement – such as Hurgin and Aurovsky – who cannot "divorce themselves from improper actions taken in the proxy battle by the participant acting under the banner of their

14

names." *Id.* (citing *Chris-Craft Industries, Inc. v. Independent Stockholders Committee*, 354 F. Supp. 895, 915 (D. Del. 1973)).

Furthermore, both Hurgin's and Aurovsky's backgrounds and experience were used in promoting the Cambridge-Ability merger.  In the proxy solicitation materials Hurgin and Aurovsky were presented as Ability's two member team of "highly-talented" "industry professionals" who would remain in place following the merger, with Hurgin remaining as the CEO and chairman of the board, and Aurovsky remaining as the CTO and a director of Ability, Inc.  In short, both Hurgin's and Aurovsky's qualifications and continued participation in the newly formed public company were essential to the successful completion of the Cambridge-Ability business combination.  As such, they each can be held liable for any material misstatements in the proxy materials.  *See, e.g., SEC v. Falstaff Brewing Corp.*, 629 F. 2d at 69 (defendant's role "was more than substantial.  It was pivotal" where he was seeking shareholder votes to approve his taking control of the company); *Lewis v. Brynes*, 538 F. Supp. at 224 ("substantial connection" element satisfied, as a matter of law, where defendant would become a director, employee, and debtor of acquired corporation).

Finally, Hurgin and Aurovsky acted at least negligently with respect to the Cambridge-Ability proxy statement.  *Dekalb Cnty. Pension Fund v. Transocean Ltd.,* 817 F. 3d 393, 408, n. 90 (2d Cir. 2016) (liability can be imposed under Rule 14a-9 for negligently drafting a proxy statement); *accord Wilson v. Great Am. Indus., Inc*., 855 F. 2d 987, 995 (2d. Cir. 1988).  Hurgin, and Aurovsky permitted the use of their names to solicit Cambridge shareholders to convince them to vote in favor of a merger that would provide them with tens of millions of dollars.  Yet they did so without exercising reasonable care in ensuring that the Proxy Statement was accurate and fulsome.  *See, e.g., SEC v. Falstaff Brewing Corp*., 1978 U.S. Dist. LEXIS 14669, *55

(director-nominee "had at least some duty to determine for himself the validity of the proxy materials and to correct statements and facts which he knew or should have known were erroneous or misleading."); *Lewis v. Brynes*, 538 F. Supp. at 1225, n. 3 ("[A] director-nominee does have some duty to determine for himself the validity of the proxy materials submitted.") (*quoting Chris-Craft Industries Inc. v. Independent Stockholders Committee*, 354 F. Supp. at 915; (*Gould v. American Hawaiian S.S. Co.*, 351 F. Supp. 853, 865 (D. Del. 1972)) (negligence standard precludes directors from failing to read proxy statements to correct statements and facts which they knew or should have known were erroneous or misleading), *vacated on other grounds*, 536 F.2d 761 (3d Cir. 1976)).

Finally, the same misrepresentations and omissions in the Proxy Statement that form the basis for the SEC's Section 10(b) and Section 17(a) claims also support the SEC's Section 14(a) claim.  A fact or statement is material for a Section 14(a) claim if there is a substantial likelihood that disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the "total mix" of information available.  *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. at 449.  Any reasonable investor voting on the merger would have found the misrepresentations, half-truths and omissions regarding Ability's claimed ownership of ULIN, that all of Ability's backlog was backed by purchase orders, and that its business relationship with its single most important customer, the police agency in Latin America, was based on oral agreements with representatives of that agency who had been terminated, to be important to their voting decision. As the Second Circuit has observed, "[l]iability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earning prospects in the current year."  *Goldman v. Belden*, 754 F.2d 1059, 1069 (2d. Cir. 1985) (*quoting Elkind v Liggett & Myers, Inc*., 635 F.2d 156, 164 (1980)).

Accordingly, the SEC has also satisfied the second requirement – probability of success on the merits or a basis to infer that Defendants violated the securities laws – for an asset freeze.

## **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court grants its motion: (1) that the escrowed funds, including principal and accrued interest, held by the Escrow Agent in the put option escrow account be frozen until further Order of this Court; and (2) that until the final disposition of this action, Ability, ACSI, Hurgin and Aurovsky, and their officers, directors, agents, servants, employees, attorneys, trustees, and those persons in active concert or participation with them, be restrained and enjoined from making any withdrawal, pledge, encumbrance, assignment, dissipation, concealment or other disposal or use of any of the funds in the put option escrow account.

Dated:  July 21, 2021

Respectfully submitted,

*/s/ Donald W. Searles*
DONALD W. SEARLES
Attorney for Plaintiff
Securities and Exchange Commission

17

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On July 20, 2021, I caused to be served the document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PRELIMINARY INJUNCTION TO FREEZE CERTAIN ASSETS AND TO RESTRAIN AND ENJOIN DEFENDANTS FROM DISSIPATING ASSETS** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  July 20, 2021                    */s/ Donald W. Searles*
_____
Donald W. Searles

***SEC v. ANATOLY HURGIN, et al.***
United States District Court—Southern District of New York
Case No. 1:19-cv-05705-MKV

## **SERVICE LIST**

Jason Gottlieb, Esq.
Edward P. Gilbert, Esq.
Daniel C. Issac, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022-4784
jgottlieb@morrisoncohen.com
egilbert@morrisoncohen.com
disaacs@morrisoncohen.com